**Latrell F. SPREWELL,**
**Plaintiff–Appellant,**

**v.**

**GOLDEN STATE WARRIORS; National Basketball Association,**
**Defendants–Appellees.**

**Latrell F. Sprewell, Plaintiff,**

**and**

**Robert Thompson, Jr.; Gordon J. Rose; Stephen G. Weizenecker; Thompson & Associates; Robert A. Gist; Paul F. Utrecht; Gist, Kennedy & Associates, Appellants,**

**v.**

**Golden State Warriors; National Basketball Association, Defendants–Appellees.**

**Nos. 99–15602, 99–17186.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 2000

Filed Nov. 7, 2000

---

Paul F. Utrecht, Law Offices of Paul F. Utrecht, San Francisco, California, for plaintiff-appellant Sprewell.

Richard R. Dale, Law Offices of Richard R. Dale, Mill Valley, California for plaintiffs-appellants Thompson, et al. .

Jeffrey A. Mishkin (Argued), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, for the defendant-appellees.

Frank Rothman (On the Briefs), Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California, and Shepard Goldfein (On the Briefs), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, Howard L. Ganz (On the Briefs), Proskauer Rose LLP, New York, New York, for defendant National Basketball Association.

Martin P. Moroski (On the Briefs), Sinsheimer, Schiebelhut & Baggett, San Luis Obispo, California, for the defendants-appellees.

Before: D.W. NELSON, THOMPSON, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Latrell F. Sprewell ("Sprewell") challenges the district court's dismissal of his claims against the National Basketball Association ("NBA") and the Golden State Warriors ("the Warriors") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Fed.R.Civ.P. 12(b)(6)"). Sprewell's attorneys dispute the district court's imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). Sprewell raises numerous state and federal claims challenging the validity of the punishments meted out by the NBA and the Warriors in response to Sprewell's physical attack on the head coach of the Warriors in 1997. The district court dismissed Sprewell's federal claims as frivolous, and found Sprewell's state claims to be preempted by section 301 of the Labor Management Relations Act ("section 301").

We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291, and AFFIRM the district court.

# I

## BACKGROUND

Sprewell joined the NBA in 1992 as a guard for the Golden State Warriors. During Sprewell's tenure with the Warriors, he played under four different head coaches, the last of whom was P.J. Carlesimo. Sprewell's star-crossed relationship with Carlesimo, while initially amicable upon its inception in June of 1997, quickly deteriorated over the ensuing six months to the point that both Sprewell and the Warriors openly entertained the possibility of trading Sprewell to another team.

Tensions between Sprewell and Carlesimo climaxed during a closed-door practice on December 1, 1997, during which Carlesimo told Sprewell to pass the ball to a teammate for a quick shot. Despite Sprewell's contention that he passed the ball "admirably, as one would expect of an All-Star," Carlesimo rebuked Sprewell for not putting more speed on his pass. When Carlesimo subsequently repeated his criticism, Sprewell slammed the ball down and directed several expletives at Carlesimo. Carlesimo responded with a similar showing of sophistication. Sprewell immediately either walked or lunged at Carlesimo and wrapped his hands around Carlesimo's neck. With his arms fully extended, Sprewell moved Carlesimo backwards, saying "I will kill you." Carlesimo offered no resistance. Sprewell grasped Carlesimo's neck for approximately seven to ten seconds—the time it took for other players and coaches to restrain Sprewell. Sprewell then left the practice floor, saying "trade me, get me out of here, I will kill you," to which Carlesimo countered, "I am here."

After showering and changing, Sprewell returned to the practice facility to again confront Carlesimo. Despite the efforts of two assistant coaches to restrain him,

Sprewell was able to approach Carlesimo and throw an overhand punch that grazed Carlesimo's right cheek. Sprewell landed a subsequent blow to Carlesimo's shoulder, but it is uncertain whether it was intentional or the product of Sprewell's attempt to free himself from those restraining him. As Sprewell left the facility, he again told Carlesimo, "I will kill you."

That evening the Warriors suspended Sprewell for a minimum of ten games and expressly reserved its right to terminate Sprewell's contract. Two days later, the Warriors exercised that right and ended Sprewell's reign as a Warrior. The NBA subsequently issued its own one-year suspension of Sprewell after conducting an independent investigation of the matter.

On December 4, 1997, Sprewell invoked the arbitration provisions of his collective bargaining agreement ("CBA") by filing a grievance challenging both his suspension by the NBA and the Warriors' termination of his contract. The arbitrator held nine days of hearings, received testimony from twenty-one witnesses, accepted over fifty exhibits, and was presented with over 300 pages of pre– and post-hearing briefs. The arbitrator found that the dual punishments issued by the NBA and the Warriors were permissible under the CBA, but found that: (1) the Warriors' termination of Sprewell's contract was not supported by just cause because after the Warriors' initial suspension of Sprewell, any residual interest of the Warriors was absorbed by the NBA's investigation of the matter; and (2) the NBA's suspension should be limited to the 1997–98 season.

On May 20, 1998, Sprewell filed the instant suit. The district court dismissed Sprewell's complaint without prejudice pursuant to Fed.R.Civ.P. 12(b)(6), and instructed Sprewell's counsel to sign any subsequently filed amended complaint in accordance with Rule 11. Failing to heed the admonitions of the district court, Sprewell filed an amended complaint that paralleled the original. The district court found the amended complaint to consist of "the same baseless claims previously dismissed by the court" and ordered Sprewell's attorneys to pay the NBA's and the Warriors' attorneys' fees pursuant to Rule 11. Sprewell asks that we reverse the ruling of the district court.

## II

### ANALYSIS

In his complaint, Sprewell leveled a multitude of claims against the NBA and the Warriors, including: (1) a request for vacatur of the arbitrator's opinion pursuant to section 301 of the Labor Management Relations Act; (2) intentional interference with freedom to make and enforce contracts pursuant to 42 U.S.C. § 1981; (3) conspiracy to violate freedom to make and enforce contracts pursuant to 42 U.S.C. § 1985(3); (4) conspiracy to interfere with the arbitral process by producing false evidence; (5) violation of common law right to fair procedure; (6) interference with prospective economic advantage; (7) interference with contractual relations; (8) violation of California's Unruh Act; (9) civil conspiracy; and (10) unfair business practices pursuant to California Business and Professional Code §§ 17200 and 17500. The NBA and the Warriors maintain that their actions were justified under the CBA and that Sprewell's state law claims fall within the preemptive penumbra of section 301.

### A. Count 1: Vacating the Arbitration Award

█ Sprewell seeks to vacate the arbitration award pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.* ("section 301"). Section 301 empowers this court to review an arbitration conducted under the terms of a collective bargaining agreement. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ Judicial scrutiny of an arbitrator's decision in a labor dispute "is extremely limited." *Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Arizona Mechanical & Stainless, Inc.,* 863 F.2d 647, 653 (9th Cir. 1988). The Supreme Court has instructed that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). We have followed suit in holding that "so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him, because their interpretation of the contract is different than his." *San Francisco–Oakland Newspaper Guild v. Tribune Pub. Co.,* 407 F.2d 1327, 1327 (9th Cir. 1969) (per curiam).

■ Notwithstanding the foregoing, we have identified four instances in which the vacatur of an arbitration award under section 301 is warranted: (1) when the award does not draw its essence from the collective bargaining agreement; (2) when the arbitrator exceeds the scope of the issues submitted; (3) when the award runs counter to public policy; and (4) when the award is procured by fraud. *See SFIC Properties, Inc. v. International Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94,* 103 F.3d 923, 925 (9th Cir.1996) (internal quotations omitted); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1134 (9th Cir.2000). Sprewell seeks refuge under each of the four exceptions.

1. **The Arbitration Award Draws its Essence from the CBA**

■ ▪ Sprewell contends that the arbitrator's approval of Sprewell's "multiple punishments"—the disciplinary actions taken by *both* the NBA *and* the Warriors in response to Sprewell's misconduct—did not draw its essence from the CBA. The thrust of Sprewell's argument is that the arbitrator improperly ascribed a conjunctive meaning to the word "or" in the CBA provision that subjects players "to disciplinary action for just cause by his Team or by the Commissioner." Sprewell alleges that by failing to read the word "or" in the disjunctive, the arbitrator not only discarded the "plain and unambiguous" language of the CBA, but actually rewrote it. Sprewell additionally argues that the arbitrator's award does not draw its essence from the CBA because "the Arbitrator relied upon the [National Football League's] collective bargaining agreement, which uses different language, i.e., the word 'and' instead of 'or.' " Sprewell's claims are legally untenable.

We have held that an arbitration award will only be set aside for failing to draw its essence from the contract in "those egregious cases in which a court determines that the arbitrator's award ignored the plain language of the contract." *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173,* 886 F.2d 1200, 1205–06 n. 6 (9th Cir.1989). This is not such a case. In the arbitration award, the arbitrator explained in detail the logic underlying his conclusion, including why he read the word "or" in the conjunctive rather than the disjunctive. Specifically, the arbitrator found that: (1) the CBA provision upon which Sprewell relies was not intended to deal with the issue of multiple disciplines, but rather was designed to emphasize "the imperative of just cause in reviewing the matters of discipline"—thus illustrating that the word "or" was likely chosen without careful consideration of its implications; (2) the CBA does not include the word "either," which would have supported the conclusion that the penalties were intended to be mutually exclusive; and (3) as demonstrated by the NFL's CBA, "[h]ad the parties here intended by contract to limit discipline with respect to the same matter to a team or the Commissioner, but not both, one would have expected some expression in the CBA as to

which has primacy." Regardless of whether we would reach the same conclusion advanced by the arbitrator, we must defer to the arbitrator's decision on the grounds that he was, at the very least, "arguably construing or applying the contract." *Misco*, 484 U.S. at 38, 108 S.Ct. 364.

## 2. The Arbitrator Did Not Exceed the Scope of his Authority

■ Sprewell argues that the arbitrator "exceeded the scope of his authority" because he was required either to uphold or to reject the suspension in its entirety. Sprewell does not, however, attempt to cite language—nor is there any—in the CBA supporting this conclusion. The Supreme Court has held that an arbitrator should be given substantial latitude in fashioning a remedy under a CBA. *See Enterprise Wheel*, 363 U.S. at 596–97, 80 S.Ct. 1358. Sprewell has failed to demonstrate why the above rule should not be applied with full vigor in the instant case. Accordingly, we reject Sprewell's contention that the arbitrator exceeded the scope of his authority by fashioning an originative remedy.

## 3. The Award Does Not Run Counter to Public Policy

■■ Sprewell alleges that the arbitration award should be vacated on the ground that it contravenes California's public policy against race-discrimination. The crux of Sprewell's argument is that by upholding the dual punishments issued by the NBA and the Warriors, the arbitrator simultaneously spread the virus of racial animus plaguing those penalties. "To vacate an arbitration award on public policy grounds, we must (1) find that 'an explicit, well defined and dominant policy' exists here and (2) that 'the policy is one that specifically militates against the relief ordered by the arbitrator.'" *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 174 (9th Cir.1995) (citation omitted). The latter element is dispositive of Sprewell's

claim. The arbitrator held that Sprewell's punishments were wholly justified by the language of the CBA and by virtue of the uniquely egregious nature of Sprewell's misconduct. Therefore, Sprewell has failed to demonstrate that the public policy of California militates against the enforcement of the arbitration award.

## 4. The Arbitration Award Was Not Procured by Fraud

■ Finally, Sprewell claims that the NBA and the Warriors tainted the arbitral process by introducing false statements and doctored pictures of Carlesimo's injuries, thus requiring that the award be vacated on account of fraud. This claim can be summarily dismissed under the rule that "where the fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators, a disappointed party will not be given a second bite at the apple." *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir.1992). Sprewell's fraud claim was presented in its entirely to, and ruled upon by, the arbitrator. Thus, we do not find it necessary to revisit this issue.

## B. Sprewell Fails to Plead Facts Sufficient to Sustain His Federal Claims for Racial Discrimination

■ A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is reviewed *de novo*. *See Monterey Plaza Hotel, Ltd. v. Local 483*, 215 F.3d 923, 926 (9th Cir.2000). Review is limited to the contents of the complaint. *See Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir.1998). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *See id.* The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. *See Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 (9th Cir.1987). Nor is the court required to accept as true allegations that

are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *See Morley v. Walker,* 175 F.3d 756, 759 (9th Cir.1999).

### 1. Claim II: 42 U.S.C. § 1981

■■■ Section 1981 provides, "[a]ll persons ... shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." Sprewell contends that he has adequately pleaded that his punishments by the NBA and the Warriors were the product of his race in violation of 42 U.S.C. § 1981. In his complaint he alleged that black NBA players (1) are punished more frequently and severely than white players, and (2) have less favorable termination and compensation clauses in their player contracts. However, the pleading problem in this case arises not from the substance of his averments, but from the rest of his complaint.

In dismissing Sprewell's section 1981 claim, the district court noted that the arbitration award was attached to Sprewell's complaint and that it contained extensive factual allegations that fatally undermined Sprewell's section 1981 claim. Our examination of the pleadings confirms that Sprewell's attachment of the arbitration award to his complaint justified both the district court's consideration in connection with a Rule 12(b)(6) motion of the factual findings contained therein as well as the conclusion the court drew from it. *See Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir.1994) ("[W]e hold that documents whose contents are alleged in a complaint and whose authenticity no party questions ... may be considered in ruling on a Rule 12(b)(6) motion to dismiss."). We have held that a plaintiff can—as Sprewell has done here—plead himself out of a claim by including unnecessary details contrary to his claims. *See Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295–96 (9th Cir.1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."); *cf. Soo Line R.R. v. St. Louis Southwestern Ry., Co.,* 125 F.3d 481, 483 (7th Cir.1997) ("A plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.").

The arbitration award annexed to Sprewell's complaint contains the arbitrator's findings that Sprewell's punishment was justified by virtue of both the "singularity of his misconduct" and the fact that Sprewell attacked his head coach, which the arbitrator found to strike "at the very core of a structure that provides stability for a team and an organized sport." The arbitration award effectively and persuasively fleshes out the fact that the actions taken by the NBA and the Warriors were motivated solely by Sprewell's misconduct and were not, as Sprewell states, the product of America's "fear of the black man's physicality and rage, and the fear and resentment of the black man's success, along with the corresponding anger that the black man is not grateful for what he has been 'given.'"

Sprewell contends that the district court's reliance on the arbitration award was erroneous because the court gave "preclusive effect to the arbitration award" in violation of the Supreme Court's mandate that race discrimination claims not be foreclosed by way of a previous arbitration. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 55–60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *see also, Bowers v. Campbell,* 505 F.2d 1155, 1160 (9th Cir. 1974). Sprewell's reliance on *Alexander* and its progeny is misplaced. Because the attachments to Sprewell's complaint prove fatal to his claims, we affirm the district court's disposition of Sprewell's section 1981 cause of action.

## 2. Count III: 42 U.S.C. § 1985(3)

■ Count III of Sprewell's amended complaint fails to state a claim for racial discrimination under section 1985(3). We have held that "[a]n indispensable element of a claim under 42 U.S.C. § 1985(3) is some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action...." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000) (internal quotations omitted). As explained above, Sprewell pleaded himself out of court by attaching the arbitration award to his complaint. The district court therefore properly concluded that Sprewell failed to adequately plead a claim under section 1985(3).

## C. Preemption Claims

■ The NBA and the Warriors correctly argue that Sprewell's state law claims for intentional interference with contract and business relations, common law right to fair procedure, civil conspiracy, and unfair business practices are preempted by section 301 of the Labor Management Relations Act. Sprewell argues that the foregoing claims do not necessitate an interpretation of the CBA and therefore fall outside the preemptive ambit of section 301. Sprewell is mistaken.

■ The Supreme Court has held that federal law exclusively governs suits for breach of a CBA, while concomitantly preempting state law claims predicated on such agreements. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). A state law claim will be preempted only when its resolution requires an interpretation of the CBA. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–10, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

■ Where a state law claim involves allegations that a defendant's actions were motivated by racial animus, the resolution of which turns on the defendant's ability to offer a nondiscriminatory reason for its actions—such as conform-

ance with a CBA—the state claim is preempted by section 301. *See Audette v. International Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1113 (9th Cir.1999). More concisely, a state law claim is preempted by section 301 where "the interpretation of the CBA is made necessary by an employer defense." *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir.1996); *see also Schlacter–Jones v. General Telephone of California*, 936 F.2d 435, 442 (9th Cir. 1991) ("The critical inquiry is thus whether the state law claim is 'independent' of the collective bargaining agreement in the sense that *its resolution* does not turn on the interpretation of the agreement." (emphasis added)). The Supreme Court has expanded the above principle into the arena of "nonnegotiable" state rights, providing that section 301 may preempt state rules that proscribe conduct, or create rights and obligations, independent of a labor contract. *See Lingle*, 486 U.S. at 407 n. 7, 108 S.Ct. 1877 ("[A] State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application. Such a remedy would be preempted by § 301."); *see also Schlacter–Jones*, 936 F.2d at 441 (9th Cir.1991) ("[T]he question is not solely whether a state law claim is 'nonnegotiable'; it is whether it is 'independent' of the collective bargaining agreement."). The foregoing precept is directly applicable to the instant case.

■ The NBA and the Warriors clearly rely upon the CBA in defending against Sprewell's state law claims. California law permits an employer to refute a prima facie case of discrimination by offering a legitimate nondiscriminatory reason for its employment decision. *See, e.g., Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal.App.4th 798, 85 Cal.Rptr.2d 459, 466 (Cal.Ct.App.1999). Therefore, the viability of Sprewell's state law claims hinges on the ability of the NBA and the Warriors to allege "legitimate nondiscriminatory rea-

sons" for their actions. They have done so by alleging that their actions comport with the CBA. The veracity of this contention can be determined only through an interpretation of the CBA, thereby invoking the preemptive power of section 301. Sprewell's state law claims are accordingly dismissed.

■■■■■ The district court also properly concluded that Sprewell's claims under the Unruh Act are meritless. In general terms, the Unruh Act provides that "all persons are entitled to free and equal accommodations, privileges, facilities and services in all business establishments. It secures equal access to public accommodations and prohibits discrimination by business establishments." *Black v. Department of Mental Health,* 83 Cal.App.4th 739, 745, 100 Cal.Rptr.2d 39 (Cal.Ct.App. 2000). The Unruh Act, however, "has no application to employment discrimination." *Rojo v. Kliger,* 52 Cal.3d 65, 77, 276 Cal. Rptr. 130, 801 P.2d 373 (Cal.1990). Sprewell's punishments, including his exclusion from NBA games as a spectator and the allegedly negative media campaigns engaged in by the NBA and the Warriors, stemmed from Sprewell's employment relationship with the NBA and the Warriors. Sprewell has therefore failed to plead facts sufficient to invoke the protections afforded by California's Unruh Act.

**D. Sanctions**

■■■■■ The district court did not abuse its discretion in imposing sanctions against Sprewell's attorneys. Orders imposing Rule 11 sanctions are reviewed for an abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Barber v. Miller,* 146 F.3d 707, 709 (9th Cir.1998). Reversal of the district court is possible only when we are "convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Harman v. Apfel,* 211 F.3d 1172, 1174 (9th Cir.2000). "Rule 11 provides for the imposition of sanctions when

a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of Los Angeles,* 120 F.3d 982, 985 (9th Cir.1997). Frivolous filings are "those that are both baseless and made without a reasonable and competent inquiry." *Buster v. Greisen,* 104 F.3d 1186, 1190 (9th Cir.1997) (internal quotations omitted).

Sprewell's attorneys correctly point out that we have traditionally exercised a high level of restraint in imposing sanctions against civil rights plaintiffs, doing so "[o]nly in exceptional cases." *Mitchell v. Los Angeles Community College Dist.,* 861 F.2d 198, 202 (9th Cir.1988). Sprewell's submission of an amended complaint that failed to ameliorate the weaknesses inherent in his original complaint makes this an "exceptional case." After providing Sprewell with a comprehensive explanation as to why the court deemed Sprewell's original complaint to be without merit, the district court urged Sprewell and his counsel to seriously consider "not amending at all, and simply dropping the matter at this point." The district court went on to state that it would allow Sprewell to amend his complaint only if each attorney representing Sprewell personally signed any amended pleading in accordance with Rule 11. Sprewell's attorneys, however, disregarded the warnings of the district court and filed another baseless complaint mirroring the original.

Therefore, even though we have traditionally exercised a heightened level of restraint in imposing sanctions against civil rights plaintiffs, here, the deferential standard of review controls. We cannot say that the district court abused its broad discretion.

**IV**

**CONCLUSION**

For the reasons outlined above, we affirm the district court's dismissal of Sprewell's claims against the NBA and the

Warriors, and affirm the district court's imposition of sanctions.

AFFIRMED.