Marion DAVIES, Plaintiff—Appellant,

v.

PREMIER CHEMICALS, INC.,
Defendant—Appellee.

No. 01–15822.

D.C. No. CV–00–00479–ECR/RAM.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 2002.

Decided Aug. 14, 2002.

Before GOODWIN, HAWKINS and
FISHER, Circuit Judges.

MEMORANDUM*

The district court entertained jurisdiction over, and dismissed, this action, finding Davies' state-law claim for tortious discharge in violation of public policy preempted by Section 301 of the Labor Management Relations Act. We reverse and remand.

Section 301 preempts state law breach of contract claims based on a collective bargaining agreement ("CBA"). *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir.2001) (en banc). A state may, however, provide substantive rights to workers that apply independent of agreements reached through collective bargaining. A state court suit seeking to vindicate these rights is preempted only if resolution of the claim is "substantially dependent" on interpretation of the CBA. *Id.* at 689–90; *see Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

The district court found Davies' action preempted by section 301 based on our statement in *Sprewell v. Golden State Warriors*, 231 F.3d 520 (9th Cir.2000), that "a state law claim is preempted by section 301 where the interpretation of the CBA is made necessary by an employer defense." *Id.* at 529 (quotation marks and citation omitted). Subsequent to the district court's decision, however, this language was withdrawn and superseded upon rehearing following our en banc decision in *Cramer*, 255 F.3d at 690–91, holding that

"[t]he plaintiff's claim is the touchstone" for preemption analysis; "a defense based on the terms of a CBA is not enough to require preemption." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 991–92 (2001) (holding that, following *Cramer*, "[a]ny attempt by the NBA and the Warriors to pull Sprewell's interference claims into the preemptive scope of section 301 by mounting a defense in reliance on the CBA would be fruitless").

Davies' state-law complaint does not refer to the CBA or allege a breach of contract. Rather, Davies alleges that Premier committed tortious discharge in violation of Nevada's public policy by firing him for refusing to work on a machine after safety locks had been removed and for refusing to operate a machine for which he had no training. Under Nevada state law, an employer who terminates an employee for seeking in good faith a safe work environment violates public policy and commits tortious discharge. *D'Angelo v. Gardner*, 107 Nev. 704, 819 P.2d 206, 212, 216 (1991). The cause of action for tortious discharge in violation of public policy is a substantive right that Nevada grants to its workers independent of any employment contract. *Id.* at 218; *see also Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 863 (9th Cir. 1987) (holding that California claim for wrongful discharge due to safety complaints is not preempted by section 301). Section 301 does not preempt claims to vindicate such nonnegotiable state law rights. *See Cramer*, 255 F.3d at 697.

We disagree with the district court's conclusion that, under Nevada law, resolution of Davies' claim is substantially dependent on interpretation of the CBA. In order to succeed on his claim, Davies is required to show that he was fired in response for refusing to perform tasks that "he reasonably suspected, in good faith," were unsafe for him to perform. *Allum v. Valley Bank of Nevada*, 114 Nev. 1313, 970 P.2d 1062, 1067 (1998); *D'Angelo*, 819 P.2d at 216. Whether Davies reasonably suspected that the tasks he was requested to perform were unsafe are issues of fact, not questions of contract interpretation. Even assuming Premier's safety procedures form part of the CBA, their interpretation by the court is not required because Davies may succeed on his claim by showing only his good faith concern for safety, regardless of whether those concerns were based on a correct interpretation of Premier's safety procedures. *See Allum*, 970 P.2d at 1067–68 (quoting with approval explanation in *McQaury v. Bel Air Convalescent Home, Inc.*, 69 Or.App. 107, 684 P.2d 21, 22–23 (1984), that claim for tortious discharge in violation of public policy may succeed where plaintiff was fired for "reporting in good faith a complaint that may turn out, after investigation, to be unfounded"). Thus, Davies' state-law claim is the type which may "permit recovery without regard to whether the behavior might be permitted under the CBA," and therefore is not preempted by section 301. *Cramer*, 255 F.3d at 697 (quoting *Miller v. AT & T Network Sys.*, 850 F.2d 543, 550 n.5 (9th Cir.1988)).

Likewise, whether Davies was fired for refusing to perform an act he considered unsafe or was fired for some other reason is a purely factual question regarding Premier's motive that does not require a court to interpret any term of the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (holding that question of employer's motive for discharge is purely factual question); *see also D'Angelo*, 819 P.2d at 213 (describing the question of whether worker was fired for seeking a safe work environment or for "outright insubordination" as a "pivotal factual issue").

Premier's reliance on *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468 (9th Cir.1984), in which we held that a claim for retaliation for filing a Mine Safe-

ty Act complaint was preempted because it was not based on a violation of any state public policy, is inapposite for the two reasons we stated in *Miller.* "First, none of the preempted claims in *Olguin* was based on a state tort that relied on a standard articulated by the courts without reference to a collective bargaining agreement." 850 F.2d at 549. Second, *Olguin* was decided before *Allis–Chalmers* (and before *Cramer*) and therefore did not apply the "substantially dependent" test. "It is no longer binding precedent." *Id.*

Davies' allegation of tortious discharge for seeking a safe working environment is not preempted by section 301. We therefore reverse the decision of the district court with instructions that it remand this action to Nevada state court for further proceedings.

**REVERSED AND REMANDED.**

* This disposition is not appropriate for publica-    tion and may not be cited to or by the courts