Argued and submitted April 10, affirmed November 15, 2000

# L & D OF OREGON, INC.,
an Oregon corporation,
*Appellant,*

*v.*

# AMERICAN STATES INSURANCE COMPANY,
an Indiana insurance corporation,
*Respondent.*

## (98-CV-0375-MS; CA A106860)

14 P3d 617

CJS, Insurance § 54.

Milly Whatley argued the cause for appellant. With her on the briefs were Gregory P. Lynch, and Hurley, Lynch & Re, P. C.

Thomas M. Christ argued the cause for respondent. With him on the brief was Mitchell, Lang & Smith.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

This is an action for defense costs and indemnity brought by L & D of Oregon, Inc. (L & D) against its insurer, American States Insurance Company (American States). L & D was the defendant in a civil action brought in federal court by a former employee, Crespi. The complaint in the underlying action alleged, among other things, that management and other employees at the L & D workplace made racially derogatory and otherwise disparaging comments to him. Crespi alleged the same basic facts in support of four claims labeled, "employment discrimination" (three counts), "intentional infliction of emotional distress," "negligent retention and supervision," and "wrongful discharge." L & D tendered the Crespi complaint to American States, which refused to defend on the ground that the complaint did not allege the occurrence of a covered event as defined in its policy.[1] L & D settled the lawsuit with Crespi and brought this breach of contract action against American States to recover the costs of its defense and the amount of the settlement. Both parties moved for summary judgment, ORCP 47, and the trial court entered judgment in favor of American States.

L & D argues that American States had a contractual obligation to defend under the policy because Crespi's complaint contained factual allegations that would satisfy all

---

[1] The policy provides:

"1. Insuring Agreement

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'personal injury' or 'advertising injury' to which this insurance does not apply.

"* * * * *

"13. Personal injury means [i]njury, other than 'bodily injury', arising out of one or more of the following offenses:

"* * * * *

"d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

"e. Oral or written publication of material that violates a person's right of privacy."

the elements of claims for slander and invasion of privacy, both of which are covered claims under paragraphs 1(d) and 1(e) of the policy. According to L & D, the facts alleged in the underlying complaint determine whether American States has a duty to defend, not the labels placed on the claims by the underlying plaintiff. American States counters that although the label placed on a claim may not be determinative, Crespi's complaint does not allege conduct covered by the policy. We affirm.

■    An insurer has a duty to defend its insured if the complaint against the insured provides any basis for which the insurer's policy provides coverage. *Ledford v. Gutoski,* 319 Or 397, 400, 877 P2d 80 (1994); *Nielsen v. St. Paul Companies*, 283 Or 277, 280, 583 P2d 545 (1978). That determination is made by a comparison of two documents: the complaint and the insurance policy. *American Hardware Ins. Group v. West One Auto.,* 167 Or App 244, 247, 2 P3d 413 (2000). An insurer should be able to determine from the face of the complaint whether its policy requires it to accept tender of the defense. *Ledford,* 319 Or at 400. If the claims against the insured as set forth in the complaint could, without amendment, serve as the basis for liability for conduct covered by the policy, the insurer must defend. *American Hardware Ins. Group,* 167 Or App at 247. "[A]ny 'doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action * * * will be resolved in the insured's favor.' " *Minnis v. Oregon Mutual Ins. Co.*, 162 Or App 198, 209, 986 P2d 77 (1999), *rev allowed* 330 Or 120, 6 P3d 1097 (2000) (quoting *Blohm et al v. Glens Falls Ins. Co.,* 231 Or 410, 416, 373 P2d 412 (1962)).

■    We agree with plaintiff that reliance on the labels placed on counts in a complaint alone is not sufficient to determine the duty to defend. *Minnis,* 162 Or App at 201 n 1 ("The basis for coverage is not necessarily limited to the legal theory with which the underlying plaintiff labeled the claim."). Rather, it is the "conduct" alleged that is critical to the determination.[2] The policy provides that "[American

---

[2] In *Ledford v. Gutoski,* 319 Or 397, 400, 877 P2d 80 (1994), the court said, "We must determine whether *the facts* alleged in the [underlying] complaint may

States] will pay those sums that the insured becomes legally obligated to pay as damages because of personal injury." "Personal injury" within the meaning of the policy means "other than 'bodily injury.'" When those definitions are read with the coverage provisions for slander and invasion of privacy set forth in paragraphs 13.d. and 13.e., we understand the policy to insure against legally cognizable claims for slander and invasion of privacy. In other words, Crespi's claims are not covered under the terms of the policy unless the conduct alleged satisfies the legal elements for those torts. *See Blohm*, 231 Or at 415 (holding that it is the insurer's duty to defend where the complaint against the insured "states a cause of action which may lie within the coverage of the policy").

■  We turn to whether the Crespi complaint contains sufficient allegations of conduct to serve as the basis for liability for either an invasion of privacy/publication of private information claim or a defamation claim. The primary elements required to make out a claim for invasion of privacy/publication of private information are: (1) that the plaintiff had private information which would otherwise have remained private; (2) that the defendant made that private information known to the public or to a large number of people; and (3) that the publication of that information would have been offensive to a reasonable person. *Tollefson v. Price*, 247 Or 398, 401-02, 430 P2d 990 (1967).

■■  L & D argues that all the allegations of conduct required to establish a claim for invasion of privacy can be found in the following language in Crespi's complaint:

> "[U]pon making plans to socialize with other black persons after work, being told comments by manager Tony Sanchez that plaintiff and his friends were intending to hold a meeting of the 'Black Panthers' after work[.]"

reasonably be interpreted to include *conduct* within the coverage of [the insurer's] policy." (Emphasis added.) *See also Ferguson v. Birmingham Fire Ins.*, 254 Or 496, 507, 460 P2d 342 (1969) ("If the complaint, without amendment, may impose liability for *conduct* covered by the policy, the insurer is put on notice of the possibility of liability and it has a duty to defend."); *Isenhart v. General Cas. Co.*, 233 Or 49, 54, 377 P2d 26 (1962) ("[T]he obligation of the insurer to defend is to be determined by the allegations of the complaint filed against the insured. * * * If the *facts* alleged in the complaint against the insured do not fall within the coverage of the policy, the insurer should not have the obligation to defend.") (emphasis added).

Assuming without deciding that the other elements of the tort of invasion of privacy are contained within the paragraph upon which L & D relies, the conduct complained of by Crespi does not include disclosure to the public or to a large number of people. To constitute an actionable invasion of privacy, a disclosure of private facts must be public in the sense that it was communicated "either to the public generally or to a large number of persons as distinguished from one individual or a few." *Tollefson*, 247 Or at 402. Here, the only allegation in the complaint is that a specific coworker made comments to Crespi about Crespi's social plans. The trial court did not err when it ruled that defendant had no obligation to defend Crespi's complaint under paragraph 13.e. of the policy.

■   The conduct necessary for a defamation claim is: (1) the making of a defamatory statement; (2) the publication of the defamatory material; and (3) a resulting special harm (unless the defamatory statement gives rise to presumptive special harm). *Muresan v. Philadelphia Romanian Pentecostal Church*, 154 Or App 465, 473, *rev den* 327 Or 621 (1998).

At oral argument, L & D argued that the conduct amounting to a claim for slander can be found in the following allegations in Crespi's complaint. Crespi alleges that he was employed by L & D "as an automobile lubrication and service technician." He also alleges:

"9.

"During the course of his employment with defendant, [Crespi] was subjected to a hostile work environment because of his membership in the black race through racially motivated conduct, repeated derogatory comments and remarks, and racial slurs by managers, supervisors and co-employees, which conduct was accepted, encouraged and condoned by defendant through its managers, promoting and creating an atmosphere of hostility toward plaintiff. Said conduct, racial slurs and remarks included the following:

"* * * * *

"5. When asking for tire pressure on vehicles being regularly told the tire pressure was 'big, black and round like your mama' or 'big, black and round like your d—k';

"* * * * *

"8. Being forced to hear racist and derogatory jokes and comments often times made in the presence of or by defendant's managers, including without limitation;

"* * * * *

"e. being told jokes and comments about working on the plantations;

"* * * * *

"g. being asked what's long and hard on a black man, and being told the answer was the 'second grade,'

"* * * * *

"10. Being told certain jobs were 'nigger work[.]'

"10.

"As a direct and proximate result of the disparate and hostile work environment to which plaintiff was subjected by defendant during his employment, plaintiff experienced extreme emotional and psychological distress, pain, suffering, humiliation, embarrassment, anger, worry, fear and marital strife all to his non-economic damage in the amount of $1,000,000.00."

As the Supreme Court said in *Barnett v. Phelps*, 97 Or 242, 191 P 502 (1920),

"Spoken words are either actionable or not actionable. Actionable words are divided into two classes: (1) Those which are actionable in themselves, or *per se*; and (2) those which are actionable only upon allegation and proof of special damage, or *per quod*. Defamatory words, where spoken, may or may not be actionable *per se*, depending upon whether or not they may properly be assigned to one or more of the several classes of cases which the rules of the common law have designated as actionable *per se*. If defamatory words are not actionable *per se* the complainant must allege and prove special damage. Words of both classes are actionable on the same ground and for the same reason. * * * 'The material element,' this court has said, 'which lies

at the foundation of the action of slander is social disgrace, or damages to character in the opinion of other men.' *Quigley v. McKee*, 12 Or 22 (5 Pac 347, 53 Am Rep 320) [(1885)].

"Both classes of words are the natural and proximate causes of pecuniary damage.

*"Words actionable per se* are classified as such on the theory that their injurious character is admitted by all men; and that on that account they *are conclusively presumed to result in damage; but other words are actionable only upon allegation and proof of their injurious effect.* Words actionable *per se* are usually divided into four classes, as follows: (1) words which impute a charge which, if true, will subject the party charged to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment; (2) words falsely spoken of a person which impute that the party is infected with some contagious disease, where, if the charge is true, it would exclude the party from society; (3) defamatory words, falsely spoken of a person, which impute to the party unfitness to perform the duties of an office or employment of profit, or the want of integrity in the discharge of the duties of such an office or employment; and (4) *defamatory words, falsely spoken of a party which prejudice such party in his or her profession or trade*[.]*"* *Barnett*, 97 Or at 244-45. (Emphasis added.)

There is no doubt that the statements made by L & D's employees were defamatory, in that they "tend[ed] to diminish the esteem, respect, goodwill or confidence in which [Crespi] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [him]." *Farnsworth v. Hyde*, 266 Or 236, 238, 512 P2d 1003 (1973), quoting *Andreason v. Guard Publishing Co.,* 260 Or 308, 311, 489 P2d 944 (1971). Also, for purposes of the analysis, we will assume without deciding that the statements were "published," within the meaning of that term. To establish the third element of a claim for defamation, the plaintiff must allege and prove either that the defamatory statement falls within one of the four categories of defamation for which special harm is presumed, or that the defamatory statement caused "special harm."

L & D argues that the statements alleged in Crespi's complaint fall within a category of defamatory *per se* statements because they called into question Crespi's ability, as an African-American, to perform certain kinds of work.[3] If L & D's assertion is correct, then the tort of slander is complete without any allegation of special harm.

We have held that defamatory statements that attack a person in their professional or employment capacity are actionable *per se* when they attack specific characteristics that pertain to the field of employment of the plaintiff. For example, in *Slover v. State Board of Clinical Social Workers*, 144 Or App 565, 568-69, 927 P2d 1098 (1996), we held that the statements,

> "[plaintiff] engaged in 'A Dubious Therapeutic Technique,' and [in] 'highly questionable techniques or exercises' involving adolescent boys, * * * [p]laintiff was found by the board to have engaged in activities that 'had a detrimental effect' on his patients, [were] 'counter therapeutic,' and 'constituted inappropriate clinical practice,' "

when made about a licensed clinical social worker, were sufficiently related to the plaintiff's professional performance and were likely to lead people to question the plaintiff's fitness to perform his job. Thus, the defamation was held to be actionable *per se*. Similarly, in *Bock v. Zittenfeld*, 66 Or App 97, 99, 672 P2d 1237, *rev den* 296 Or 486 (1984), we held the

---

[3] Two additional defamation doctrines are implicit in L & D's argument. First, it relies on a theory of defamation commonly called "group defamation." The statements made to Crespi were about African-Americans in general rather than about him specifically. Generally, "no action lies for the publication of a general condemnation concerning a large group of class of persons[,]" absent a showing that the statement was directed at a particular member of the group. William L. Prosser, *Torts* 784 (5th ed 1984). Where, however, the plaintiff is the only member of the group present when the statement is made, or "the words are reasonably understood by the hearers or readers to be directed individually at him," a defamatory statement about a group can be actionable by a member of the group. *Id*. Second, its argument implicates the idea of "inducement," that comes into play when not all of the facts are alleged that are necessary to show the statement's defamatory nature. (For example, an allegation that one made the statement "Mary is engaged in a sexual relationship with John," is not sufficient to establish a claim for defamation *per se* unless the circumstances also demonstrate that Mary is not married to John.) The complaint contains the allegation in paragraph six that Crespi is "a member of the black race," so one can infer from the four corners of the complaint that Crespi is targeted by the statements about African-Americans.

following statements about a television news reporter actionable *per se*: Plaintiff was fired because of "just unsatisfactory coverage over this last weekend on top of another instance of the same thing[ ]" and "[h]e simply didn't perform his job as far as his responsibility for covering the news is concerned." We said that the statements implied "the want of the qualities or skill that the public is reasonably entitled to expect of persons engaged in such a calling." *Bock,* 66 Or App at 100. Likewise, in *Demers v. Meuret,* 266 Or 252, 254, 512 P2d 1348 (1973), the statement:

> "What kind of protection can you give us from this terrible, mean, demented old man and what kind of protection do we have, * * * [plaintiff] might come out and chop our airplanes up with an axe,"

was held to be actionable *per se* because "such words could be found by the trier of fact to prejudice the plaintiff in his business of operating an airport." *Demers,* 266 Or at 254.

■    In contrast to the above statements, Crespi's complaint alleges statements that have no nexus to his competence to perform his job. The statements do not cast aspersion on *his ability* to perform any of his job's essential functions, nor do they assert that he lacks any characteristic necessary to the successful performance of his job. The only statement that arguably is related to Crespi's work at L & D is the statement that implies that certain jobs are only suitable for African-Americans. However, even that statement, however distasteful, does not imply that Crespi does not perform his work at L & D as an automotive technician suitably. Because the statements do not state or even imply that Crespi was not capable of performing his job, we reject L & D's argument that they are defamatory *per se*.[4]

■    We are left with the task of examining the complaint for some allegation of "special harm." L & D asserts that we can find that allegation in paragraphs 10, 33, and 34 of Crespi's complaint. The allegations of paragraph 10 are that

---

[1] We do not suggest that the statements alleged in Crespi's complaint are not defamatory. We hold only that they are not defamatory *per se* because they do not imply that Crespi was unable to perform his work as an automotive technician.

"As a direct and proximate result of the disparate and hostile work environment to which plaintiff was subjected by defendant during his employment, plaintiff experienced extreme emotional and psychological distress, pain, suffering, humiliation, embarrassment, anger, worry, fear and marital strife, all to his non-economic damage in the amount of $1,000,000.00."

Paragraphs 33 and 34 allege that

"As a result of defendant's conduct plaintiff has suffered economic damages in the form of lost earnings in the approximate amount of $3,600.00. * * * As a result of the negligent retention and supervision of Sanchez by Defendant, plaintiff has suffered and continues to suffer mental pain, stress, anguish, aggravation, diminished self-esteem, humiliation, sleeplessness and marital strife, all to his non-economic damage in an amount of $1,000,000."

L & D argues that the damages Crespi sought for his negligence claim (those set out in paragraphs 33 and 34) are "typical of the damages sought in defamation cases." The problem with Crespi's claims of injury in the above paragraphs is that they do not satisfy the element of "special harm" that is required in a defamation case where the defamatory words are not slanderous *per se*. An injury to the plaintiff's reputation is the "gravamen of the tort of defamation." *Shirley v. Freunscht,* 303 Or 234, 238, 735 P2d 600 (1987). Said another way, "[t]he material element which lies at the foundation of the action of slander is social disgrace or damages to character in the opinion of other men." *Quigley v. McKee,* 12 Or 22, 23, 5 P 347, 53 Am Rep 320 (1885). When the defamatory words are not actionable *per se*, the law will not presume an injury to the plaintiff's reputation. *Barnett,* 97 Or at 245. Under those circumstances, an allegation of "special harm" is required to demonstrate the injury to reputation. *See Clark v. Morrison,* 80 Or 240, 244, 156 P 429 (1916).

In *Clark,* the complaint alleged, "anxiety and distress of mind, physical illness requiring expensive treatment in hospitals and elsewhere, and * * * [deprivation] of friendship, esteem, kindness, help, and assistance of her friends and of society, which she had fully enjoyed thereto" caused by defamatory words that were not actionable *per se*. The *Clark*

court held those allegations insufficient to establish "special harm" and that a demurrer should have been sustained against the complaint. The court explained that the loss of social intercourse and the occurrence of physical effects from the defamation were insufficient allegations of injury to warrant recovery. Rather, the loss must be of "a pecuniary character, or the loss of some substantial or material advantage" specific to a loss of reputation. *Id.* at 245.

Here, Crespi's allegations are that he suffered psychological and emotional distress, humiliation and embarrassment. The *Clark* court held those types of allegations insufficient to allege a "special harm." Crespi's complaint does not allege a pecuniary loss from the defamation. In fact, it describes Crespi's damages as "non-economic damages" and as "lost wages" from a constructive discharge from employment. Finally, Crespi did not allege that he lost a substantial or material advantage such as the loss of employment *as the result* of the defamation.[5] Consequently, the conduct about which Crespi complained does not satisfy the "special harm" element required for a claim of defamation when the words used are not defamatory *per se*. It follows that American States had no duty to defend under paragraph 13.d. of its policy. Because there is no coverage under L & D's policy, the trial court properly held that American States did not breach its contract by refusing to defend L & D.

Affirmed.

---

[5] The *Clark* court gave separate consideration to the plaintiff's allegation that she suffered a loss of "substantial hospitality," as a result of the defamation. Apparently, the court thought that, unlike the loss of "public confidence and esteem," loss of "substantial hospitality" might have been a special harm that would have satisfied the pleading requirement. However, the complaint failed to state "some facts from which the conclusion would follow that there had been a loss of substantial hospitality." *Clark*, 80 Or at 245. We are unsure of the meaning of the phrase "substantial hospitality" as used in 1916. Regardless of its meaning, there are no facts alleged in Crespi's complaint from which it can be inferred that the defamation caused him to be materially disadvantaged in any manner.