**Joseph W. KOFOED, Plaintiff,**

v.

**ROSENDIN ELECTRIC, INC.,
a California Corporation,
Defendant.**

**Civil No. 00–95–KI.**

United States District Court,
D. Oregon.

July 27, 2001.

Michael R. Dehner, Portland, OR, for Plaintiff.

David J. Riewald, Bullard Smith Jernstedt Harnish, Portland, OR, for Defendant.

## OPINION

KING, District Judge.

Before the court is the motion for summary judgment (# 20) by defendant Rosendin Electric, Inc. For the reasons set forth below, I grant the motion.

## FACTS

Plaintiff Joseph Kofoed is a licensed electrician and a member of Local 48 of the International Brotherhood of Electrical Workers ("Local 48"). Local 48 is the exclusive representative for all electricians that work in the greater Portland metropolitan area. On behalf of local electricians, Local 48 negotiated the terms of a Collective Bargaining Agreement ("CBA") that establishes the terms and conditions under which licensed electricians will work for unionized electrical contractors.

Pursuant to the terms of the CBA, Local 48 has a system that notifies out-of-work electricians of job orders placed by contractors and then dispatches electricians to such jobs. Article 5 .03.01 of the CBA provides that the contractor has the "right to reject any applicant for employment." If the contractor rejects (or "turns around") the electrician, the CBA does not require the contractor to tell the electrician why he was turned around (i.e., the CBA is silent on this issue).

Defendant Rosendin Electric, Inc. ("Rosendin") is an electrical contractor that is based in San Jose, California. Rosendin signed a letter of assent agreeing to be bound by the CBA for all electrical work performed in Local 48's jurisdiction.

In 1998, Rosendin was performing the electrical work at Intel Corporation's Ronler Acres construction site in Hillsboro, Oregon. Dan Daskalos, who was Rosendin's Senior General Foreman at that job site, is also an electrician and member of Local 48. One of the licensed electricians employed by Rosendin at the job site was Scott Morang. Morang is also a member of Local 48 and was appointed by Local 48 to be its steward at the job site. Rosendin asserts that it did not give Morang any supervisory or managerial authority.

In October 1998, Rosendin contacted Local 48 and asked to have licensed electricians dispatched to the Ronler Acres job site. On October 26, 1998, Local 48 dispatched Kofoed to that job site to report the next day. Upon his arrival at the site the next morning, Kofoed was "turned

"around" by Daskalos. Daskalos did not give Kofoed a reason for the turn around.

Later that same day, Kofoed called Rosendin's California headquarters and talked to Rosendin's Vice–President Robert Bower. During this phone call, Kofoed asked whether his status as a Vietnam veteran qualified him for any preferential treatment. According to Kofoed, Bower responded that Rosendin did not have to hire anyone it did not want to hire. When Kofoed asked why he had been turned around by Daskalos, Bower responded (according to Kofoed) that the CBA did not require Rosendin to tell him the reason. Kofoed admits that he then stated that he "shouldn't have to hook electrodes up to a person to get the truth out of somebody . . . ."

On November 3, 1998, Kofoed again called Rosendin's California headquarters and spoke to Rosendin's Human Resources Manager, Richard Wilder. Kofoed told Wilder that he had served in Vietnam. Kofoed asked why he had been turned around on October 27, 1998 and Wilder responded that he did not know but that the CBA did not require Rosendin to tell any electrician why the person had been turned around. According to Kofoed, he then told Wilder that he (Kofoed) should not have to hook electrodes up to a person to get the truth.

Wilder allegedly interpreted Kofoed's statement as a threat to possibly harm Rosendin's personnel at the Ronler Acres site. Consequently, he called the Ronler Acres job site to warn Daskalos and Rosendin's other local officials about Kofoed's threatening comment.

Wilder subsequently called Local 48's office in Portland to report Kofoed's threat and to demand that Kofoed never again be dispatched to work for Rosendin. Wilder also wrote a letter, dated November 10, 1998, and sent it to Local 48. In that letter, Wilder stated that Kofoed "suggest-

ed he could get [answers to his question about why he was turned around] the way he got them while in Vietnam, by hooking-up electrodes to people unwilling to talk."

On November 4, 1998, Local 48 again dispatched Kofoed to the Ronler Acres job site in response to Rosendin's request for licensed electricians. When Kofoed reported to the job site the next day, he was again turned around and was again not told the reason. That same day, Kofoed claims Morang (Local 48's site steward) orally told two of Rosendin's electricians (Paul Riggs and Denny Coey) that Kofoed had threatened to torture a Rosendin official with electric shock treatment to get information like he had done in Vietnam.

On November 9, 1998, Kofoed filed with Local 48 a grievance against Rosendin that he summarized as "widely-known disability member denied interview/employment." Defendant's Exh. H. On December 4, 1998, Local 48 notified Kofoed that his grievance lacked merit and would be closed. Defendant's Exh. I. In explaining this decision, Local 48 relied on Section 5.03.01 of the CBA which states, as noted above, that an employer "shall have the right to reject any applicant for employment." *Id.* There is no evidence of any other grievance filed by Kofoed against Rosendin.

On November 17, 1999, Kofoed filed his Complaint in state court. He alleges that Rosendin committed the tort of defamation through Wilder's letter to Local 48 and by Morang's alleged oral statements to co-workers Riggs and Coey. He also alleges that Rosendin committed the tort of intentional interference with economic relations (between Kofoed and Local 48, as well as between Kofoed and electrical contractors). Rosendin removed the case to this court on January 21, 2000 based on diversity and federal question subject matter jurisdiction.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir.), *cert. denied*, 528 U.S. 952, 120 S.Ct. 375, 145 L.Ed.2d 293 (1999).

## DISCUSSION

Rosendin defends this case in two ways. First, Rosendin argues that Kofoed's state tort claims are preempted by Section 301 of the National Labor Relations Act ("NLRA") because the court must interpret the CBA to resolve the claims. Assuming there is preemption, Rosendin then argues that the applicable statute of limitations and exhaustion requirements under the NLRA dictate dismissal of Kofoed's claims. Second, notwithstanding its arguments under the NLRA, Rosendin argues that the claims fail on the merits.

### I. *Preemption Under the NLRA*

■ The Supreme Court has held that federal law exclusively governs suits for breach of a CBA, while concomitantly preempting state law claims predicated on such agreements. *Sprewell v. Golden State Warriors*, 231 F.3d 520, 529 (9th Cir.2000) (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). A state law claim is preempted only when its resolution requires an interpretation of the CBA. *Spre-well*, 231 F.3d at 529 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–10, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)).

■ As Rosendin points out, two of the prima facie elements of an intentional interference with contract claim are (1) the existence of a business relationship; and (2) intentional interference with that relationship. In this case, Kofoed's relationship with Local 48 and his potential future relationships with other NECA electrical contractors are defined by and inextricably intertwined with the provisions of the CBA. *See Scott v. Machinists Automotive Trades Dist. Lodge*, 827 F.2d 589, 591–92 (9th Cir.1987) (in finding preemption under Section 301, the court noted that "[i]nterference with contract relations is obviously connected with interpretation of the contract."); *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1412 (9th Cir. 1991) ("this court has generally found claims for interference with contractual relations and prospective economic advantage preempted by section 301."), *cert. denied*, 508 U.S. 959, 113 S.Ct. 2927, 124 L.Ed.2d 678 (1993). Because of the need to construe the CBA to determine whether prima facie elements of the tort are satisfied, the intentional interference claim is preempted.

■ Preemption also exists when "the interpretation of the CBA is made necessary by an employer defense." *Sprewell*, 231 F.3d at 529 (quoting *Reece v. Houston Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir.1996)). In this case, Rosendin's defense of qualified privilege to the intentional interference claim provides an additional basis for preemption.

As its thirteenth affirmative defense, Rosendin asserts that "[d]efendant's statements were subject to an applicable conditional or qualified privilege." Defendant's Answer and Affirmative Defenses to Plain-

tiff's Complaint, p. 6. Rosendin expands on this defense in its memorandum in support of its motion for summary judgment and clarifies that it asserts this defense against both Kofoed's intentional interference claim and his defamation claim.

■ "A statement is conditionally privileged if: (1) it was made to protect the interests of defendants; (2) it was made to protect the interests of plaintiff's employer; or (3) it was on a subject of mutual concern to defendants and the person to whom the statement was made." *Wattenburg v. United Medical Laboratories*, 269 Or. 377, 380, 525 P.2d 113 (1974). This privilege applies to defamation claims and to claims for intentional interference with contract. *Id.* (defamation claim); *Cooper v. Portland General Electric Corp.*, 110 Or.App. 581, 585, 824 P.2d 1152, *rev. denied*, 313 Or. 209, 830 P.2d 595 (1992) (intentional interference).

I am persuaded by Rosendin's argument that I would have to interpret the CBA in order to determine whether Wilder's communications to Local 48 related to a subject of mutual concern to Rosendin and Local 48. Some of the provisions of the CBA that could be relevant to such a determination include: (1) Article 5.01.01 (introducing the referral procedure and explaining that it is "[i]n the interest of maintaining an efficient system of production in the Industry [and] providing for an orderly procedure of referral of applicants for employment ...."); (2) Article 5.03.01 ("The Employer shall have the right to reject any applicant for employment ."); (3) Article 2.10.01 ("The Union understands the employer is responsible to perform the work required by the owner. The employer shall therefore have no restrictions, except those specifically provided for in the collective bargaining agreement in planning, directing, and controlling the operation of all his work, in deciding the number and kind of employ-

ees to properly perform the work [and] in hiring and laying off employees ...."); and (4) Basic Principles ("All parties to and covered by this Agreement have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between all parties aforementioned and the Public. * * * All will benefit by continuous peace and by adjusting any differences by rational common sense methods.").

In short, I find that the intentional interference claim and a portion of the defamation claim (related to Wilder's letter to Local 48) are preempted on the basis that the CBA will need to be construed to determine if Rosendin had a qualified privilege to make the statements. As such, those claims are converted into claims under Section 301 of the NLRA and become subject to the applicable six-month statute of limitations. *Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998).

■ The limitations period begins to run when a plaintiff receives a letter from his union notifying him that it will pursue his grievance no further. *Id.* On December 4, 1998, Local 48 notified Kofoed that it would not pursue his grievance against Rosendin. Kofoed did not, however, file his Complaint in state court until more than 11 months later on November 17, 1999. Accordingly, the claims are time-barred.

## II. *Remaining Portion of Defamation Claim*

■ Although the portion of the defamation claim premised on Morang's statements to Coey and Riggs could also be rejected on the basis that the CBA needs to be construed to determine if a qualified privilege exists, I prefer to take a different

approach for that portion of the claim. This is due to the fact that it is more difficult to accept that the CBA speaks to the issue of any mutual interest between Morang, acting as Rosendin's alleged agent, and Coey and Riggs.

In addition to its preemption arguments, Rosendin attacks Kofoed's defamation claim in a variety of ways on the merits, including on the basis that Kofoed has not provided the necessary evidence to raise a question of material fact on certain elements of the tort. One of those arguments, tailored for the portion of the defamation claim premised on Morang's alleged oral statements to Coey and Riggs, is dispositive.

■ Unlike defamation claims premised on a defamatory writing (libel), defamation claims premised on an oral statement (slander) require that a plaintiff prove either that the statement falls within one of the actionable per se categories or that the statement caused the plaintiff "special damage." *L & D of Oregon, Inc. v. American States Ins. Co.*, 171 Or.App. 17, 24, 14 P.3d 617 (2000). Although the statement allegedly made by Morang (i.e., that Kofoed threatened Rosendin's Vice President as a result of being turned around) is capable of being defamatory, it is not actionable per se because it does not attack Kofoed's competence to perform as an electrician. *Id.* at 26, 14 P.3d 617. Thus, Kofoed must demonstrate "special damage" in the form of a pecuniary loss that resulted from Morang's alleged statement to Coey and Riggs.

Rosendin put this matter in issue in its opening brief and concise statement (Defendant's Concise Statement, ¶ 16), yet Kofoed made no real response. This may be due to Kofoed's deposition testimony that he is not aware of any company that has not hired him because of Morang's alleged statement, primarily because Kofoed has not sought work as an electrician since the fall or early winter of 1998. Kofoed Dep., pp. 323–24. Because no genuine issue of material fact has been raised on the issue of special damages resulting from Morang's alleged statements, summary judgment is appropriate against the remaining portion of Kofoed's defamation claim.

## CONCLUSION

Based on the foregoing, the motion for summary judgment (# 20) by defendant Rosendin Electric, Inc. is GRANTED.