Argued and submitted July 11, 2001, reversed and remanded August 7, 2002

# Ernie AFFOLTER,
*Appellant,*

*v.*

# BAUGH CONSTRUCTION OREGON, INC.,
*Respondent.*

## 9904-03897; A110867

51 P3d 642

Scott N. Hunt argued the cause for appellant. With him on the briefs were Jennifer L. Lanfranco and Busse & Hunt.

Todd Baran argued the cause for respondent. On the brief were Janet M. Schroer and Hoffman, Hart & Wagner, LLP.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

### ARMSTRONG, J.

Plaintiff appeals from a judgment dismissing his defamation claim after the trial court granted defendant Baugh Construction Oregon, Inc.'s motion for summary judgment. Because we conclude that there are questions of fact with regard to one of the alleged defamatory statements, we reverse the trial court's ruling.

In reviewing the trial court's ruling, we determine whether the record on summary judgment, when viewed in the light most favorable to plaintiff, shows that there are no genuine issues of material fact and that defendant was entitled to judgment as a matter of law. No genuine issue of material fact exists if, based on the record on summary judgment, no objectively reasonable juror could return a verdict for plaintiff. Plaintiff has the burden of producing evidence on any issue raised in the motion as to which he has the burden of persuasion at trial. ORCP 47 C.

We recite the evidence from the record on summary judgment in the light most favorable to plaintiff. Baugh was the general contractor on a construction project at the Multnomah Athletic Club in Portland. Baugh subcontracted all mechanical work to Heinz Mechanical, which in turn subcontracted with Natkin Contracting to provide all heating, ventilation, and air conditioning work on the project. Plaintiff is employed by Natkin as a sheet metal superintendent. Forrester, one of Baugh's project superintendents, supervised plaintiff's work. The record on summary judgment shows that, for over one year before the date of the events giving rise to the claim, Forrester and plaintiff did not get along and that Forrester wished to have plaintiff transferred from his supervision.

Baugh, Heinz, and Natkin each have policies of zero tolerance for intoxication on the job site. On the evening in question, plaintiff came to work to begin his shift at 10:00 p.m. He had previously worked from 7:00 a.m. until 3:00 p.m. on that day and had not been feeling well. He had been taking cold medication throughout the day. In between his day and night shifts, plaintiff went to his home in Sandy, took a dose of cold medicine, and had two to three beers to

relax. When he returned to work at 10:00 p.m., he did not feel any of the effects of the beers he had had earlier in the day. On the job, he worked on a ladder at the top of a boiler, using a blow torch. He was not having difficulty with his balance. Forrester asked Tom Bleth, a pipe fitter and employee of Heinz, to do plaintiff's work because he thought plaintiff looked tired and shaky. In response to Forrester's action, plaintiff mocked Forrester and behaved insubordinately. Jason Taylor, an apprentice working for Natkin under plaintiff, overheard Forrester say that plaintiff had had "too much to drink." Neither Taylor nor Bleth noticed that plaintiff was unsteady or smelled of alcohol. Plaintiff told Forrester that he had taken some cold medication.

Forrester later called defendant's safety personnel, reporting that there was someone on the job site who may have consumed alcohol. He did not, however, specifically mention plaintiff's name or have plaintiff tested for alcohol consumption. After cleaning up the job site, plaintiff and Taylor went to a tavern and had two beers. Because his day shift began in only a few hours, plaintiff decided not to go home and instead slept in his truck. In the morning, after checking on the job site, he went home.

When he returned home, plaintiff had a telephone message from Wayne Brosman, a Natkin project manager, indicating that Brosman had received calls from Forrester and Mike Mantifel, Heinz's general superintendent, stating that plaintiff had been intoxicated on the job and that Baugh wanted Natkin to take plaintiff off the job. Brosman advised plaintiff to call Bob Armstrong, a general foreman for Natkin. Plaintiff later spoke to Armstrong, who told plaintiff that Mantifel had called him to say that Forrester had reported that plaintiff was intoxicated on the job. Armstrong removed plaintiff from the Baugh job and gave him another assignment. Mantifel and Forrester later denied that they had asked that plaintiff be removed from the job for intoxication or that Forrester had ever reported that plaintiff was intoxicated. Rather, they claimed that Baugh sought to have plaintiff removed from the job because of his impaired performance and insubordinate behavior.

Plaintiff asserts that, in the context of those events, defendant, through its agents, made three actionable defamatory statements:

(1) Forrester's statement to, or overheard by, Taylor at the job site that Forrester thought plaintiff had had too much to drink. Plaintiff offered evidence of this defamatory statement through an affidavit by Taylor:

"While [plaintiff] and I were up doing the job, [Forrester] said something about wanting to know if [Bleth], the fitter from Heinz, could do the job, because he thought [plaintiff had] had 'too much to drink.' "

(2) A statement by Forrester to Mantifel, as reported by Mantifel to Armstrong, that plaintiff had been intoxicated on the job site and should be removed from the job. Plaintiff offered evidence of this statement through an affidavit of Robert Armstrong, the Natkin foreman:

"Mr. Mike Mantifel, the project manager of Heinz Mechanical, called me and told me that he had a meeting with Dennis Forrester of Baugh Construction and a representative from the MAC Club [*sic*]. Mr. Mantifel told me that Mr. Forrester and the MAC Club representative had told him that [plaintiff], an employee of Natkin Contracting, was 'intoxicated' on the job site * * * and should be removed from the job. When I asked Mr. Mantifel if the report was fact or rumor, or words to that effect, he responded that this was true, and that [plaintiff] was removed from the job site."

(3) Mantifel's repetition to Armstrong of Forrester's statement to Mantifel that plaintiff was intoxicated on the job site and should be removed from the job and that the information was true and not a rumor, as evidenced again by Armstrong's affidavit.

■■ To give rise to an issue of fact in a claim for defamation, the plaintiff must present evidence sufficient to establish that the defendant published to a third person a defamatory statement about the plaintiff. *Wallulis v. Dymowski,* 323 Or 337, 342, 918 P2d 755 (1996). A defamatory statement is one that would subject another to "hatred, contempt or ridicule * * * [or] tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse,

derogatory or unpleasant feelings or opinions against [the other]." *Reesman v. Highfill*, 327 Or 597, 603, 965 P2d 1030 (1998) (internal quotations and citations omitted).

■■ We consider the evidence in the record on summary judgment with regard to Forrester's alleged statement to Taylor. Taylor's affidavit states that Forrester said that he thought that plaintiff had had too much to drink.[1] The trial court ruled that Forrester's statement on the job that he thought plaintiff had had too much to drink was not actionable, because it was a statement of opinion only and was not capable of defamatory meaning. Assuming that Forrester's statement was his opinion, that does not necessarily make the statement nonactionable in defamation. A statement of opinion is actionable if the recipient could reasonably conclude that the statement was based on undisclosed defamatory facts. *Bock v. Zittenfield*, 66 Or App 97, 101, 672 P2d 1237 (1983), *rev den* 296 Or 486 (1984). Although Forrester's statement that he "thought" plaintiff had had too much to drink may have been presented as an opinion, it implied the unstated underlying facts that plaintiff had been drinking before coming to work and that he was intoxicated on the job, contrary to his employer's and industry-wide policy. Those facts would tend to diminish the esteem, respect, goodwill, or confidence in which plaintiff is held, or to excite adverse, derogatory, or unpleasant feelings or opinions about plaintiff. *See Reesman*, 327 Or at 603. The recipient could reasonably conclude that the statement was defamatory.

■ Furthermore, we conclude that as a matter of law the statement was capable of a *per se* defamatory meaning.[2] Statements that attack a person in the person's professional or employment capacity are defamatory *per se, i.e.*, without allegation or proof of special damages, when the attack relates to specific characteristics that pertain to the plaintiff's field of employment. *Cook v. Safeway Stores, Inc.*, 266 Or 77, 82, 511 P2d 375 (1973); *L & D of Oregon, Inc. v.*

---

[1] We reject defendant's assertion that plaintiff conceded that that statement is not defamatory. We have read through the transcript of the summary judgment hearing and there is no clear concession on that point.

[2] At this stage in the case, the legal issue is whether the statement was capable of a defamatory meaning. Whether it was defamatory presents a factual issue to be determined by the factfinder on remand.

*American States Ins. Co.*, 171 Or App 17, 24, 14 P3d 617 (2000); *Slover v. State Board of Clinical Social Workers*, 144 Or App 565, 568-69, 927 P2d 1098 (1996); *Bock*, 66 Or App at 99; *Benassi v. Georgia-Pacific*, 62 Or App 698, 702, 662 P2d 760, *mod on recons* 63 Or App 672, 667 P2d 532, *rev den* 295 Or 730 (1983) (statement by employer that employee was fired because he was "drunk and misbehaving in a bar" was defamatory *per se*). Here, a trier of fact could find that Forrester's statement to Taylor, based on the unspoken defamatory facts that plaintiff had been drinking before coming to work and was intoxicated on the job site, prejudiced plaintiff in his employment, which involves working on construction sites where there is a zero tolerance for intoxication on the job. We conclude, for that reason, that Forrester's alleged statement on the job site was capable of a *per se* defamatory meaning.[3]

■ Defendant asserts that plaintiff's claim based on the first statement fails as a matter of law because there is no question of fact as to the truth of the statement: in light of defendant's zero tolerance policy, the ingestion of any alcohol between shifts was a violation of company policy and was "too much," and plaintiff admitted that he had had two to three beers between shifts. We agree with plaintiff that there is evidence from which it could be found that plaintiff was not intoxicated on the job site and conclude that the question of whether plaintiff was in compliance with the zero tolerance drug and alcohol policy was a question of fact for the finder of fact.

Defendant asserts that, even if the statement was defamatory, it was privileged as a matter of law. An alleged defamatory statement is subject to a qualified or conditional privilege if (1) it was made to protect the interests of the defendant; (2) it was made to protect the interests of the plaintiff's employer; or (3) it was on a subject of mutual concern to the defendant and the person to whom the statement was made. *Wattenburg v. United Medical Lab*, 269 Or 377, 378, 525 P2d 113 (1974). Defendant asserts that, as a matter of law, the alleged defamatory statement falls squarely

---

[3] Defendant does not dispute that Forrester's statement is attributable to defendant.

within each of the three described privileges, because it was made to protect the mutual interests of Natkin, Heinz, and Baugh, as well as employees and others on the job site. Plaintiff does not dispute that the statement would have been privileged if it had been made for the proper reason. Rather, he argues that there is evidence that Forrester made the statement, not because he believed that plaintiff was intoxicated on the job, but because he wanted plaintiff to be removed from the job for personal reasons; accordingly, plaintiff asserts, there is a question of fact as to Forrester's purpose in making the statement and, therefore, as to whether the privilege was abused. Defendant acknowledges that there is evidence from which it could be found that Forrester wanted plaintiff removed from the job for reasons other than his intoxication, but it asserts that Forrester's reasons were also related to plaintiff's job performance and therefore fall within the privilege.

Forrester's motivation to act on behalf of his employer is not the only factual prerequisite for the qualified privilege. A qualified privilege may be lost if the speaker does not believe that the statement is true or lacks reasonable grounds for believing the truth of the statement. *Kraemer v. Harding*, 159 Or App 90, 108, 976 P2d 1160, *rev den* 329 Or 357 (1999) (quoting *Lund v. Arbonne International, Inc.*, 132 Or App 87, 96, 887 P2d 817 (1994)). If there is evidence that would support a finding that Forrester did not believe or had a reasonable doubt as to the truth of his statements, that evidence would give rise to a question of fact as to whether defendant abused its qualified privilege.

Viewing the record in the light most favorable to plaintiff, we conclude that the evidence is sufficient to give rise to a question of fact whether Forrester believed that his statement about plaintiff was true. There is evidence that Forrester had long expressed hostility to plaintiff and had a desire to have him removed from the job site. There is evidence that plaintiff was performing his job acceptably and was not intoxicated. Whether Forrester believed or reasonably believed the truth of his statement was a question of fact for the factfinder, as was the question of whether Forrester abused a qualified privilege.

Because there are questions of fact as to whether Forrester believed the truth of his statement, and because the statement, if made, would be defamatory *per se*, we conclude that the trial court erred in granting defendant's motion for summary judgment.[4]

Reversed and remanded.

---

[4] Because our disposition of the first assignment of error results in a reversal of the trial court's granting of summary judgment for defendant on the defamation claim, we need not address whether plaintiff's assignments relating to the two other alleged defamatory statements would also require reversal.