Argued and submitted November 17, 2017; limited judgment reversed on claims of defamation *per se* and interference with economic relations, otherwise affirmed March 11, 2020

NV TRANSPORT, INC.,
*Plaintiff-Appellant,*

*v.*

V & Y HORIZON, INC.,
an Oregon corporation and
Vitaliy Fogel,
*Defendants-Respondents.*

Multnomah County Circuit Court
15CV21130; A163230

462 P3d 278

Plaintiff, who brought multiple claims against defendants arising out of defendants' allegedly wrongful appropriation of plaintiff's customers, appeals a limited judgment after the trial court granted defendants' motion for summary judgment on several of the claims, asserting that there are genuine issues of material fact that preclude summary judgment. *Held*: Viewing the record on summary judgment in the light most favorable to plaintiff, the court concluded that there are genuine issues of material fact that preclude summary judgment on plaintiff's claims of intentional interference with economic relations and defamation *per se*. The trial court therefore erred in granting defendants' motion for summary judgment on those claims.

Limited judgment reversed on claims of defamation *per se* and interference with economic relations; otherwise affirmed.

Henry C. Breithaupt, Judge pro tempore.

Gary M. Bullock argued the cause for appellant. Also on the briefs was Gary M. Bullock & Associates, P. C.

J. Aaron Landau argued the cause for respondents. On the brief were Susan Marmaduke, Nathan Morales, and Harrang Long Gary Rudnick P. C.

Before Armstrong, Presiding Judge, and Shorr, Judge, and Sercombe, Senior Judge.

ARMSTRONG, P. J.

Limited judgment reversed on claims of defamation *per se* and interference with economic relations; otherwise affirmed.

**ARMSTRONG, P. J.**

Plaintiff NV Transport, Inc., brought multiple claims against defendants Vitaliy Fogel and his company, V & Y Horizon, Inc., arising out of defendants' allegedly wrongful appropriation of plaintiff's customers, independent contractor drivers, and employees, while serving as a dispatcher in plaintiff's transport business. Plaintiff appeals a limited judgment after the trial court granted defendants' motion for summary judgment on several of the claims. We write only to address plaintiff's contentions that the trial court erred in granting defendants' motion for summary judgment on two claims of intentional interference with economic relations and a claim of defamation *per se*. Viewing the record on summary judgment in the light most favorable to plaintiff, we conclude there are genuine issues of material fact that preclude summary judgment with respect to all three claims, ORCP 47 C, and we therefore reverse that portion of the limited judgment dismissing the two interference claims and the defamation claim, and otherwise affirm.

## I.   BACKGROUND

We draw our summary of the evidence from the record on summary judgment, viewed in the light most favorable to plaintiff. Plaintiff is a licensed motor carrier in the business of freight transport. Plaintiff owns trucks and also employs and contracts with drivers. One aspect of plaintiff's business is "drayage," which involves the transport of freight over short distances, often as a segment of a longer transport, such as from a shipyard or railyard to a warehouse. In its drayage business, plaintiff daily receives a list of transport opportunities by email from customers and prospective customers and then assigns drivers to those jobs.

Beginning in 2011, plaintiff desired to build up its drayage business. It brought on Fogel and his company—V & Y Horizon, Inc.—on a contract basis, to work as a broker on commission, in plaintiff's drayage business and under plaintiff's license, matching drayage customers in need of freight transport with independent carriers.

Fogel did not have success as a broker but he accepted plaintiff's offer to work on commission as plaintiff's drayage

dispatcher. As a dispatcher, Fogel received offers of dray-age from customers, negotiated agreements for the transport of freight, and oversaw the assignment of plaintiff's drivers. Under Fogel's management, plaintiff's drayage business grew, and plaintiff hired several people to assist Fogel. Fogel and his assistants communicated with freight customers through an email account dedicated to drayage.

Beginning in 2014, Fogel decided to develop his own transport business through V & Y Horizon, Inc. At that time, V & Y Horizon, Inc. was not a licensed carrier and did not have customers, trucks, or drivers. Fogel completed the necessary applications and obtained a motor carrier license for V & Y Horizon, Inc.

In early 2015, Fogel began in earnest to plan for his departure from plaintiff and his transition to his own drayage business under V & Y Horizon, Inc., and he decided to bring most of plaintiff's drayage business with him. He began communicating with plaintiff's drayage customers, explaining that he was leaving plaintiff and that he would continue in the drayage business as V & Y Horizon, Inc. In an email to one of plaintiff's customers, Fogel explained that, although he was leaving plaintiff, he would still be in the drayage business:

> "Business as usual under V&Y Horizon Inc ... All (90+%) trucks I am working now with are migrating with me ... I'm leaving NVT only as I was under contract with them and since I and they see best business practices and ethics **diametrically differently,** so this was just waiting to happen ... I'm sure you as an intelligent person I know – can read between the lines ...

> "Otherwise, I'm still in business and should there be the need for you to cover existing moves I already did as NV Drayage Manager, I'll still do same pretty much volume just under my own company now."

(Boldface and underscoring in original.)

In the spring and summer of 2015, plaintiff experienced a significant drop in its earnings from many of its customers. In July 2015, Fogel gave notice to plaintiff that he was quitting, as did an employee who had been working with Fogel in dispatch. It was then that plaintiff learned

that Fogel, while working for plaintiff, had been diverting plaintiff's drayage business to V & Y Horizon, Inc. Plaintiff terminated Fogel before his planned departure.

Plaintiff then brought this action, alleging, among other claims, that defendants had defamed plaintiff to its customers and had intentionally interfered with plaintiff's economic relations with both current and prospective customers. Defendants denied each allegation and sought summary judgment on six of plaintiff's 11 claims, asserting that plaintiff had failed to present evidence as to all elements on each of the claims. In a limited judgment, the trial court granted defendants' motion. With respect to the interference claims, the trial court concluded that "there is a failure by Plaintiff to support as to each contract or business relationship both a wrongful method and harm." With respect to the defamation claim, the trial court explained that the record lacked evidence of communications that were defamatory *per se*.

On appeal, plaintiff asserts that the trial court erred, because the evidence in the record on summary judgment gives rise to genuine issues of material fact with respect to each element of the interference claims and the defamation claim. Plaintiff, as the nonmoving party on summary judgment, bears the burden to produce evidence presenting a genuine issue of material fact as to each element of the claim on which plaintiff would have the burden of persuasion at trial. ORCP 47 C; *Chapman v. Mayfield*, 358 Or 196, 204, 361 P3d 566 (2015). As explained below, based on our review of the record on summary judgment, viewed in the light most favorable to plaintiff, we conclude that plaintiff has presented evidence sufficient to give rise to genuine issues of material fact with respect to the interference and defamation claims, and that the trial court therefore erred in granting defendants' motion for summary judgment as to those claims.

## II.  ANALYSIS

A.  *Interference with Economic Relations and Prospective Advantage*

We first address the interference claims. To establish a claim for intentional interference with economic relations, a plaintiff must prove:

> "(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the relationship or prospective advantage, and (6) damages."

*McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995). The same elements are applicable to a claim of interference with "prospective economic advantage." *Allen v. Hall*, 328 Or 276, 285, 974 P2d 199 (1999); *Thompson v. Telephone Data Systems, Inc.*, 130 Or App 302, 313 n 1, 881 P2d 819, *adh'd to as modified on recons*, 132 Or App 103, 888 P2d 16 (1994) (liability for interference with a prospective economic relationship arises "when the defendant, without a privilege to do so, induces a third person not to enter into or to continue a business relationship with the plaintiff"). There is no dispute here that, during the relevant time, plaintiff had relationships with customers as well as prospective economic advantages with those customers and prospective customers. The question in our review of the trial court's summary judgment ruling is whether there are genuine issues of material fact on the elements of intentional interference, causation, harm, and improper means.

1. *Intentional interference*

The record includes evidence that, beginning in 2015, while serving as the drayage dispatcher for plaintiff, Fogel diverted to V & Y Horizon, Inc., a portion of plaintiff's potential daily freight business. Plaintiff presented evidence that Fogel daily selected jobs to divert to V & Y Horizon, Inc., carried out that business for V & Y Horizon, Inc., using plaintiff's facilities, equipment, and contract drivers, as well as plaintiff's employees while they were being paid by plaintiff.

There is evidence in the record on summary judgment that, while running plaintiff's dispatch department, Fogel communicated with plaintiff's customers so as to cause them to direct their business to V & Y Horizon, Inc. Those communications include emails to customers from which it could be found that Fogel disparaged plaintiff's business, and advised customers that he was taking plaintiff's trucks

with him, that plaintiff would no longer be providing dray-age, and that all future drayage business would be handled by V & Y Horizon, Inc.

There is evidence in the record on summary judgment that, upon his termination, Fogel placed an "auto-forward" on the email account that plaintiff used to communicate with its current and prospective drayage customers, directing the customers to V & Y Horizon, Inc.'s email account, and that Fogel blocked plaintiff's access to the account by changing access codes, preventing plaintiff from following up with existing customers through email. There is evidence that a person who attempted to reach plaintiff through the usual drayage email account would receive an automated reply that the email address was no longer associated with plaintiff and that communications for Fogel should be sent to "[Fogel's] new group dispatch mail box," the email address of V & Y Horizon, Inc.

On appeal, defendants do not directly contest the evidence of Fogel's conduct described above. Instead, defen-dants contend that, with respect to each customer, the record lacks evidence of at least one element of the claimed interference. For example, defendants note that plaintiff's complaint named 19 customers with whom defendants allegedly interfered. Defendants assert that the record does not include documentation of specific communications of a separate interference by Fogel with 14 of those customers.

We reject defendants' contention that the record must include evidence of separate acts of interference as to each individual customer or prospective customer when, as here, the record on summary judgment includes evidence of interference with plaintiff's customers generally. Plaintiff presented evidence that, on a daily basis and over a period of months, Fogel diverted transport opportunities offered by multiple customers with whom plaintiff had relationships, away from plaintiff and to V & Y Horizon Inc., and that, after he was terminated, Fogel redirected all of plaintiff's emails from drayage customers to a different account and blocked plaintiff's access to its email account. It was not nec-essary, in light of that evidence, for plaintiff to also present evidence of separate acts of interference with respect to each

individual customer. We readily conclude that the record on summary judgment gives rise to genuine questions of material fact as to the element of intentional interference.

### 2. *Causation of "harm," and damages*

The trial court stated that the record did not include evidence of "harm," but did not specify whether it was referring to the causal effect of the alleged interference to the harmed relationship, or to damages. We think the record on summary judgment is sufficient to preclude summary judgment as to both. The record on summary judgment includes evidence from which it could be found that plaintiff's drayage income from many of its existing customers declined significantly in the spring and summer of 2015, after defendant began diverting jobs to V & Y Horizon, Inc., and declined again after Fogel diverted and blocked plaintiff's access to the drayage email account. Plaintiff presented evidence that, among the business opportunities that plaintiff lost as a result of Fogel's diverting of prospective business was a transport opportunity worth over $270,000. Also, there is evidence that, in redirecting emails from plaintiff's drayage email account and blocking plaintiff's access, Fogel prevented plaintiff from managing transports in progress and communicating with both current and prospective drayage customers, thereby causing plaintiff to lose business and income. The coincidence of defendants' interference and plaintiff's lost income allows a reasonable inference that it was Fogel's interference, rather than some unrelated circumstance, that caused both the harm to plaintiff's relationships with its customers and plaintiff's damages. The evidence gives rise to genuine issues of material fact as to the elements of causation and harm.

### 3. *Improper means*

An interference in another party's contractual or other economic relations is tortious only if it is "wrongful by some measure beyond the fact of the interference itself," such as by improper means or improper motive. *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487, 498, 982 P2d 1117 (1999) (internal quotation marks omitted). If liability is asserted based on improper means, the means must have violated some objective standard, such as a statute,

recognized rule of law, or established standard of a trade or profession. *Id.* at 498. In *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or 201, 210 n 11, 582 P2d 1365 (1978), the court provided some examples of improper means, including "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood."

There is evidence in the record on summary judgment that would permit findings that, in order to divert plaintiff's business opportunities to V & Y Horizon, Inc., Fogel misappropriated plaintiff's own equipment, employees, and drivers, misrepresented that plaintiff would no longer be in the drayage business, disparaged plaintiff's business practices and ethics, and cut off plaintiff's ability to communicate with its drayage customers. Under the guidelines established in *Northwest Natural Gas Co.* and *Top Service Body Shop*, we conclude that that evidence gives rise to a genuine question of material fact as to whether defendants' means of interference were improper.

In summary, we conclude that the record on summary judgment presents genuine issues of material fact on each element of the interference claims with respect to plaintiff's customers.[1] The trial court therefore erred in granting defendants' motion for summary judgment as to the interference claims.

B.  *Defamation* per se

We next address plaintiff's defamation claim. In the business context, a defamatory statement is one that is false and that "ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, [or] profession." *Brown v. Gatti*, 341 Or 452, 458, 145 P3d 130 (2006). Plaintiff has pleaded its defamation claim as a defamation *per se*. The claim of defamation *per se* shares elements with the claim of defamation: the making of a defamatory statement and the publication of the defamatory material. *L & D of Oregon, Inc. v. American*

---

[1] We have considered and reject without further discussion plaintiff's contention that the trial court erred in granting defendants' motion for partial summary judgment as to the allegations of interference with plaintiff's employees and drivers.

*States Ins. Co.,* 171 Or App 17, 25, 14 P3d 617 (2000). In defamation, a plaintiff ordinarily must show that a defamatory publication resulted in "special harm." But the requirement for proof of special harm is dispensed with if the defamatory statement is deemed to be defamatory *per se*. *Id.*

Some words are considered to be so defamatory that they are harmful and actionable *per se*, "on the theory that their injurious character is admitted by all men; and that on that account they are conclusively presumed to result in damage." *Id.* at 24 (quoting *Barnett v. Phelps*, 97 Or 242, 244-45, 191 P 502 (1920)). Examples include "defamatory words, falsely spoken of a person, which impute to the party unfitness to perform the duties of an office or employment of profit, or the want of integrity in the discharge of the duties of such an office or employment." *Id*; *see also Neumann v. Liles*, 358 Or 706, 712, 369 P3d 1117 (2016) (a false accusation of misconduct or dishonesty in the performance of a profession or employment is defamation *per se*); *Brown*, 341 Or at 458 (same).

As previously noted, the trial court granted defendants' motion for summary judgment on the defamation claim after concluding that the record does not include evidence of communications by Fogel that were defamatory *per se*. On appeal, defendants defend that conclusion, but we disagree. Among the emails that Fogel sent to plaintiff's customers was one in which Fogel explained that he was leaving NV Transport because

> "I and they see best business practices and ethics **diametrically differently,** so this was just waiting to happen … I'm sure you as an intelligent person I know—can read between the lines …."

(Boldface and underscoring in original.) Defendants assert the truth of the literal words of that statement—that defendants and plaintiff "see best business practices and ethics diametrically differently"—and contend that plaintiff has not put on any evidence to dispute it. But whether a statement is defamatory focuses on how a recipient would understand it. *Brown*, 341 Or at 459. Defendants have not addressed the potential defamatory implication of the statement to the recipient. Fogel's statement, viewed in the

light most favorable to plaintiff, is reasonably susceptible to the implication that plaintiff is unethical or dishonest and does not engage in best business practices. If untrue, that implication would be defamatory *per se*. It is the role of the factfinder to determine whether, in the context in which the statement was made, the recipient would perceive that implication and whether it is true or false. We conclude that the trial court erred in granting defendants' motion for summary judgment on the claim of defamation *per se*.

Limited judgment reversed on claims of defamation *per se* and interference with economic relations; otherwise affirmed.